ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| NATIONAL MINING ASSOCIATION, et al., ) ) ) Petitioners, ) ) v. ) ) ) UNITED STATES ENVIRONMENTAL ) PROTECTION AGENCY, et al., ) ) Respondents. ) ) | No. 23-1275, and consolidated cases |

**REPLY IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, HOLD THESE PETITIONS IN ABEYANCE**

On December 8, 2023, Respondents the U.S. Environmental Protection Agency and Michael S. Regan, Administrator (collectively, "EPA"), moved to dismiss this case for lack of jurisdiction, ripeness, and standing.[1] ECF 2030756 at 8-19 ("Mot."). EPA moved, in the alternative, to hold the petitions in abeyance until litigation over EPA's underlying SIP Disapproval Action and Good Neighbor Plan is concluded. Mot. 19-22.

---

[1] EPA filed its motion in Nos. 23-1275 and 23-1321, which have since been consolidated. ECF 2034071.

At a minimum, EPA's request for abeyance should be granted. Petitioners' responses state that they do not oppose abeyance, absent consolidation of this case with Petitioners' challenges in *Utah v. EPA*, which concerns the underlying Good Neighbor Plan. ECF 2032088 at 2 ("KM Resp."); ECF 2032093 at 3 ("NMA Resp."). This Court sought the parties' positions on consolidation with *Utah* and other preliminary matters in both sets of cases on October 11, 2023. ECF 2021268. Its December 4th order ruling on the parties' submissions did *not* order consolidation of this case and the *Utah* case, so that matter is settled.[2] ECF 2029865. Accordingly, this case should, at a minimum, be held in abeyance until litigation over the SIP Disapproval Action and the Good Neighbor Plan has concluded.

But the Court should go further and dismiss these petitions. Petitioners fail to establish that this Court has jurisdiction over Petitioners' claims, that Petitioners have standing to bring those claims, and that those claims are ripe.

Petitioner Kinder Morgan focuses on a single issue raised in its Statement of Issues: an assertion that the Interim Rules should have expressly tolled the Good

---

[2] Petitioners "request[]"consolidation of these cases with *Utah*, KM Resp. 2; NMA Resp. 2-3, but neither response is styled as a cross-motion and, as described, the Court already considered but did not order consolidation. In any event, for the reasons detailed in EPA's previous filing, ECF 2026750, consolidation is unwarranted.

2

Neighbor Plan's compliance deadlines for states with underlying judicial stays. KM Resp. 1, 5-11; *see* NMA Resp. 16-19 (raising the same argument). But those compliance deadlines are not presently applicable to sources in the stay states and will not be applicable again without new action from EPA. Mot. 16-17; 88 Fed. Reg. 49,295, 49,297 (July 31, 2023) (First Interim Rule); 88 Fed. Reg. 67,102, 67,103-04 (Sept. 29, 2023) (Second Interim Rule). So Kinder Morgan's insinuation that, absent tolling, those compliance deadlines still govern their actions – even though the Interim Rules took express action to ensure they do not – is incorrect. *See* KM Resp. 6 (suggesting it must expend costs "to attempt to meet the 2026 deadline"). EPA did not set those deadlines to automatically spring back to life when (and if) the judicial stays lift. It amended the regulatory text to *indefinitely* stay deadlines for sources in those states. *See* 88 Fed. Reg. at 49,297-98; *id.* at 67,104. And EPA cannot reimpose any deadlines for the sources in those states without a new agency action, reviewable on a contemporaneous record. *Id.* at 49,297; *id.* at 67,103-04.

Neither Kinder Morgan nor the other Petitioners, *see* NMA Resp. 16-19, can claim Article III injury from an EPA action taken to ensure they are *not* regulated by the Good Neighbor Plan: as with any currently unregulated party, they have no obligations now, may be subject to obligations in the future, and will have those

3

obligations set in a future agency action on the facts and circumstances (and judicial decisions) applicable at that time.

Petitioners cannot paper over that standing deficiency by claiming they have been or may be harmed by their choice to "expend resources" to "reduce [the] uncertainty" created by the judicial stays. KM Resp. 6; *see* NMA Resp. 17. This purported "uncertainty" cannot satisfy the Supreme Court's threshold for standing based on actions taken in anticipation of future events. *Clapper v. Amnesty International USA*, 568 U.S. 398, 402 (2013) (explaining that parties "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *see id.* at 416; *see also Arizona v. EPA*, 77 F.4th 1126, 1131-32 (D.C. Cir. 2023) (rejecting petitioners' claim of harm from "not knowing what future obligations they will face" where the agency's rule delaying their obligations "gives the states more time to hedge their bets" and where "setting it aside would worsen any problem of regulatory uncertainty").

Petitioners' choice to begin complying with obligations that are not in force against them, that may never be in force against them, and that, even if they come back into force, will not do so absent new rulemaking on appropriate compliance timelines cannot be justified as the product of anything "certainly impending." Kinder Morgan acknowledges that it is subject, at most, to a "future, unknown compliance deadline." KM Resp. 6. And EPA has already reassured entities

4

covered by the stays that it anticipates that future compliance deadlines will provide "comparable" lead time to that originally provided, just as Petitioners seek here. *See* 88 Fed. Reg. at 67,103-04.[3] Because their purported injuries arise exclusively from voluntary conduct based on unfounded speculation about possible future deadlines, Kinder Morgan's claimed harms are self-inflicted and cannot constitute Article III injury-in-fact. Meanwhile, the remaining Petitioners state only that they "may" need to begin implementing emissions controls in states covered by the stays, NMA Resp. 17 – an equivocation that is plainly insufficient to establish "actual and imminent" injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Petitioners provide no authority for their contrary position. Petitioners' citations to two run-of-the-mill cases where a party showed they were likely to suffer "economic harm" from regulations actually in force against them or their direct interests have nothing to say about the standing of a party who is not presently regulated. KM Resp. 7; NMA Resp. 17. Nor can Petitioners rely on the suggestion that the standing of an "object" of an action is "self-evident." KM

---

[3] That this statement is not binding does not create injury. *See* KM Resp. 8. Whether binding or not, EPA's clarification of its intent undermines Petitioners' claim to a reasonable fear that EPA will impose a May 2026 compliance deadline and so has left them "no choice" but to begin complying with the Good Neighbor Plan now. *Id.* at 6.

5

Resp. 7 (quoting *Maine Lobstermen's Ass'n v. NMFS*). This Court distinguished that theory in *Arizona*, explaining that when a rule does not "constrain[] what regulated parties may lawfully do," "the fact that the rule *applies* to a party hardly makes self-evident that party's standing to challenge the rule." 77 F.4th at 1131. The *Arizona* Court thus rejected that standing is self-evident to challenge rules that simply allow but do not require certain actions. *Id.* The Interim Rules go even farther: they specifically disclaim the obligation of these parties to comply with the Good Neighbor Plan *at all*. The removal of those legal obligations cannot confer standing.[4]

Petitioners' ripeness arguments are similarly unavailing. First, Petitioners' claims that they will suffer hardship if the Court finds these challenges unripe fail for the same reason they do in the context of standing. Petitioners' fear of "the May 1, 2026 compliance deadline," KM Resp. 10; *see* NMA Resp. 18-19, has no basis in fact, as that deadline is not applicable to them and EPA has already

---

[4] Petitioners' reliance on *National Association of Clean Air Agencies v. EPA* ("*NACAA*"), where parties asserted EPA did not "go far enough" to regulate air pollution, is misplaced. KM Resp. 8. *NACAA* concerned the stringency of emissions standards for aircraft; the Court found standing because there was a "substantial probability" of harm where the alleged laxity of EPA's rule "requires states to impose stricter controls on emissions from other individual sources." 489 F.3d 1221, 1228 (D.C. Cir. 2007). Here, Petitioners have no obligation to do anything at all, and their purported harms require speculation that some future EPA action will set unlawfully short compliance timeframes. This case lacks even a passing similarity to *NACAA*.

6

confirmed that it does not expect to revive that deadline in the stay states. *See supra*. The excision of that deadline, and its replacement with *no* deadline, cannot create hardship sufficient to ripen these claims.

Nor can Petitioners claim that this issue is ripe because it is "purely legal." KM Resp. 9; NMA Resp. 18. The compliance timeline for elimination of upwind pollution affecting downwind states under the Good Neighbor provision requires factual inquiry. For Petitioners to prevail on their claim that EPA should have pre-determined lead times here, the Court would need to find that EPA had an adequate factual basis before it to conclude that such presumptive lead times would not only be appropriate at *any* future date but would constitute compliance "as expeditiously as practicable" under a range of future factual scenarios. *See Wisconsin v. EPA*, 938 F.3d 303, 317 (D.C. Cir. 2019) (describing EPA's obligation in setting the timing of upwind states' compliance with the Good Neighbor provision). Contrary to Petitioners' suggestion, that is a question dependent on factual considerations, *cf.* KM Resp. 9; this Court should not wade into a speculative dispute about deadlines for future compliance until those deadlines are actually established on a record this Court can assess. *See State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 479 (D.C. Cir. 1986) (challenges to final action are unripe where "further administrative action is needed to clarify the agency's position" or the court would "benefit from letting the question arise in some more concrete and final form").

7

National Mining's response (in which all Petitioners join, including Kinder Morgan, KM Resp. 1 n.1) likewise fails to counter any of the grounds for dismissal identified in EPA's motion. National Mining disputes that Petitioners plan to challenge "only decisions made in the rulemaking challenged in *Utah*" – the Good Neighbor Plan. NMA Resp. 8. But the remainder of National Mining's argument affirms what EPA's motion stated: the only claims it presents that do not directly address the regulatory choices made in the Good Neighbor Plan argue that the Plan should have been reconsidered in light of the judicial stays. *Id.* at 8-9. As detailed below, neither type of claim is viable here.

Petitioners' direct attacks on the Good Neighbor Plan's design are improper collateral attacks, *see* Mot. 8-11, and Petitioners marshal no support for the proposition that these issues are properly before the Court in this case. *See* NMA Resp. 8-20. And as EPA's motion explained, Petitioners' attempts to challenge EPA's failure to reconsider the Good Neighbor Plan after the judicial stays are barred because Petitioners have not exhausted administrative remedies. Mot. 13-14. Petitioners attempt to shrug off this requirement by claiming that the Clean Air Act's exhaustion requirements are non-jurisdictional; but even so, they are mandatory. *See EPA v. EME Homer City Generation, LP*, 572 U.S. 489, 512 (2014); *Nat. Res. Def. Council v. EPA*, 571 F.3d 1245, 1259 (D.C. Cir. 2009)

8

(affirming that the D.C. Circuit "enforce[s]" Clean Air Act Section 7607(d)(7)(B)'s exhaustion requirement "strictly").

Petitioners also cannot reasonably assert that their objection is to the Interim Rules and not the Plan itself – which is the legal source of the emission reduction obligations in the 11 remaining states that Petitioners claim injure them. For example, Petitioners claim "EPA was required to analyze and take comment on" whether an "11-State plan" complies with the Clean Air Act. NMA Resp. 13-14. That is, necessarily, a question of the Good Neighbor Plan's form and function and thus a demand for its broader reconsideration. Similarly, Petitioners' effort to retread their (unsuccessful) arguments for consolidating this case with their *Utah* challenges includes an assertion that the record for the Court's review of the "11-State plan" question "is entirely linked to the rulemaking challenged in *Utah*" and the "record" in that case underlying EPA's basis for its "emissions limits, state budgets, and trading program." *Id.* at 14. The record for the Interim Rules on review here tellingly does not contain that material because the Interim Rules did not promulgate Good Neighbor obligations for the 2015 ozone standard for *any* state. Indeed, the Interim Rules specifically disclaimed that they were reopening the emissions reductions obligations of the states still covered by the Good Neighbor Plan. Mot. 10, 14. If Petitioners wish to dispute their Good Neighbor obligations as they pertain to the remaining 11 states – and whether such

9

obligations remain well-founded – their challenge is necessarily to the Good Neighbor Plan, and it may only come to this Court after those questions have been fully aired before the Agency.

Petitioners' new emphasis on the fact that the Interim Rules took "discretionary" action when sorting the states covered by judicial stays back into pre-existing trading programs, NMA Resp. 10, is also insufficient to defeat dismissal. Petitioners make clear that their complaint, as above, is limited to the fact that the Good Neighbor Plan was not stayed as to all 23 states – and does not extend to any other aspect of EPA's action to reconstitute the pre-existing trading programs. *Id.* at 12; *cf.* 88 Fed. Reg. at 49,299-300 (explaining that EPA did not have material discretion in reconstituting the trading programs). But, as above, Petitioners were obligated to raise that dispute first in a reconsideration petition addressing the Good Neighbor Plan, as it bears directly on the operation of that Plan. Petitioners cannot skirt exhaustion requirements by dressing up the same argument in different clothing.

National Mining's response on standing fails as well. For the reasons above and in EPA's motion, the Court cannot redress Petitioners' complaints about the Good Neighbor Plan through these challenges to the Interim Rules. Petitioners' claims of standing boil down to an assertion of harm from the "emissions limitations" imposed in the "11-State federal [Good Neighbor P]lan," NMA Resp.

10

15, but the Interim Rules impose no emissions limitations on the 11 states still subject to the Plan.[5] That purported "direct harm," *id.*, is the product of the Good Neighbor Plan itself, which is within the purview of the *Utah* panel. Indeed, Petitioners' response acknowledges that to secure redress, this Court would not only have to vacate the Interim Rules, but also "instruct[] … EPA to stay the entire federal plan" until it reconsiders application of the Good Neighbor Plan in those 11 states. NMA Resp. 16. Under the Clean Air Act's judicial review provision, such an order is beyond this panel's powers. *See* Mot. 14-15.

Lastly, Petitioners cannot fairly claim that EPA seeks to deprive them of their day in court. KM Resp. 10-11. Petitioners' challenges to the Good Neighbor Plan in *Utah* raise all of the objections levied here as to that Plan's design and operation. Petitioners may also pursue their objections administratively and seek judicial review, if appropriate, at the consummation of that process. *See generally* 42 U.S.C. § 7607. And Petitioners will be able to challenge any future rulemaking re-imposing Good Neighbor obligations on them and setting actual compliance timeframes. As such, no element of the legal obligations applicable to these parties, either now or in the future, will escape judicial review. Petitioners are not entitled to a second forum in which to rehash or forecast those disputes, especially

---

[5] Nor has the change in the Plan's scope altered those limitations or affected sources' ability to reasonably comply with them. *See Utah*, ECF 2013255 at 24-26, 31-32.

where EPA's Interim Rules were compelled by court order and institute judicial stays issued at the urging of many of these same Petitioners. None of Petitioners' claims here present distinct, or ripe, cases or controversies for this Court's disposition, so these petitions should be dismissed – or, at a minimum, held in abeyance.

DATED: January 5, 2024

TODD KIM
Assistant Attorney General

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN
ELISABETH H. CARTER
ZOE B. PALENIK
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-9277
chloe.kolman@usdoj.gov

*Counsel for Respondents*

OF COUNSEL:

DANIEL P. SCHRAMM
KYLE DURCH
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Reply complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(2)(A) because it contains approximately 2,596 words, excluding exempted portions, according to the count of Microsoft Word.

/s/ *Chloe H. Kolman*
CHLOE H. KOLMAN

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Reply have been served through the Court's CM/ECF system on all registered counsel this 5th day of January, 2024.

/s/ *Chloe H. Kolman*
CHLOE H. KOLMAN